[No. C052576. Third Dist. Mar. 12, 2007.]

THOMAS V. FOGARTY, as Cotrustee, etc., et al., Plaintiffs and Appellants,
v.
CITY OF CHICO, Defendant and Respondent.

**COUNSEL**

GCA Law Partners, Douglas B. Aikins, William D. Connell and Jeffrey K. Lee for Plaintiffs and Appellants.

Allen Matkins Leck Gamble Mallory & Natsis, James L. Meeder, Michael Patrick Durkee, David H. Blackwell; David R. Frank, City Attorney, and Lori J. Barker, Assistant City Attorney, for Defendant and Respondent.

**OPINION**

**DAVIS, J.**—Plaintiffs Thomas V. and Mary Fogarty (in their capacity as the trustees of two trusts) appeal from a judgment of dismissal after the trial court sustained the demurrer of defendant City of Chico (City) and several individual defendants. They limit the scope of their appeal to a single count in their pleading against only defendant City.[1] They contend the superior

---

[1] Plaintiffs have dismissed the individual defendants from the appeal.

court erred in its conclusion that this count is time-barred. We shall affirm. In so doing, we find that in this instance the applicable statute of limitations is codified in the Subdivision Map Act (Gov. Code, § 66410 et seq.) rather than the Mitigation Fee Act (Gov. Code, § 66000.5 et seq.).

BACKGROUND

Accepting the well-pleaded factual allegations of the amended petition filed in January 2006 (*Robison v. City of Manteca* (2000) 78 Cal.App.4th 452, 455 [92 Cal.Rptr.2d 748]. (*Robison*)), plaintiff trusts are landowners that are seeking on behalf of themselves "and in the public interest" to enforce various provisions of law that "govern the exercise of discretion by [defendant City] . . . over a real estate development owned and proposed by [plaintiff trusts]."

More particularly, plaintiffs had applied to develop a subdivision called Oak Valley. In approving the application, the City's planning agency authorized 80 to 160 residential units on a parcel known as "Lot Q." The decision was appealed to the city council. In May 2005, the city council adopted a motion of intent to reduce the authorized number of units on Lot Q to 80, and to affirm the decision in all other respects. However, after a hearing on September 20, 2005, the city council voted four to three to merge the boundaries of Lot Q with the adjacent parcel to its west (Lot P) and to preclude any residential use of Lot Q.[2]

Lot Q is zoned RS-20, which limits its use to no more than two residential units per acre. At this density, it has a fair market value of $17 million. Plaintiffs did not at any point consent to a reduction in density below that authorized for RS-20 zoning.

In taking this action, members of the city council cited two rationales at the hearing. They wished to mitigate the aesthetic impacts of the remainder of the Oak Valley development, and they wanted to preserve Lot Q as open space for the public's benefit.[3] Defendant City did not comply with the requirements of Government Code section 66001 (hereafter, undesignated section

---

[2] In its demurrer, defendant City requested the trial court to take judicial notice of the text of the resolution, which does not precisely reflect the petition's characterizations of it. For example, the petition neglects to mention that it allowed plaintiffs to increase the number of units on Lot P by 160.

[3] The resolution itself made findings that the configuration of the subdivision as revised is "appropriate for development while providing permanent protection for those portions . . . which are not appropriate for development[, g]iven the site's many physical and environmental constraints," "protect[s] the environment by maintaining the majority of the steeper slopes, oak woodlands, and special status plant species in permanent open space," and "preserv[es] unique natural and historic features present on the site . . . . Open space areas containing the oak woodlands and riparian/creek are visually linked to the developed portions of the plan . . . ."

references will be to the Government Code).[4] Under the authority of section 66020 et seq., plaintiff trusts filed a letter of protest on October 17, 2005, with defendant City.[5] They also delivered a courtesy copy of their petition on November 8. They filed their initial petition in this matter on December 19, 2005. However, they did not serve the petition on defendant City until December 27.[6]

In its order sustaining the demurrer to the third count in the amended petition, the court stated "[plaintiffs] failed to serve the petition and complaint on [defendant City] . . . within 90 days of the accrual of . . . [the] cause[] of action, as required by . . . section 66499.37." It did not grant leave to amend, and directed the dismissal of the action in its entirety. Plaintiff trusts filed their notice of appeal in a timely manner in May 2006.

## DISCUSSION

The briefing of the parties comes down to a straightforward issue. Section 66499.37, on which the trial court relied, is part of the Subdivision Map Act (the Map Act; see § 66410) and provides that "Any action . . . to attack . . . the decision of [a] . . . legislative body concerning a subdivision . . . or to determine the reasonableness, legality or validity of any condition attached thereto, shall not be maintained . . . unless such action . . . is commenced and *service of summons effected within 90 days after the date of such decision.*"[7] (Italics added.) On the other hand, section 66020, subdivision (d)(2), on which plaintiffs relied in their amended petition, is part of the Fee Act and provides that "Any party who files a protest . . . *may file*

---

[4] This is a provision of the Mitigation Fee Act (the Fee Act; see § 66000.5). It requires a local agency, in imposing a fee as a condition of approving a development project, to identify the purpose of the fee, the use to which it will be put, the reasonable relationship between the use and the project, and the reasonable relationship between the amount and the project. (§ 66001.)

[5] Defendant City filed a stipulation in this court to augment the record with a copy of this letter. While plaintiffs do not object to the augmentation, they object to any use of the letter to contradict the allegations of the petition. They are correct. As this letter was not incorporated in the petition by reference, this proposed augmentation cannot have any effect in the context of a demurrer on the amended petition's allegation regarding it, as we cannot take judicial notice of any of the contents of the letter. (*Bach v. McNelis* (1989) 207 Cal.App.3d 852, 864 [255 Cal.Rptr. 232].) We therefore deny the stipulation to augment the record with the letter and the motion to take judicial notice of portions of the City's municipal code, as they are not necessary to our resolution of the appeal.

[6] In its demurrer, defendant City requested judicial notice of the return on the summons.

[7] A similar limitations provision applies to challenges to the facial validity of a land use regulation under the Planning and Zoning Law. (§§ 65000, 65009, subd. (c)(1); *Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22 & fns. 10, 24 [32 Cal.Rptr.2d 244, 876 P.2d 1043] (*Hensler*).) As we find that the Fee Act is inapplicable to plaintiffs' petition, we do not need to consider defendant City's fallback argument based on the limitations period of the Planning and Zoning Law.

*an action* to attack . . . the imposition of the fees, dedications, reservations, or other exactions imposed on a development project by a local agency *within 180 days after the delivery of the notice* [from the local agency]." (Italics added.) We must determine which limitations period is controlling as part of our de novo review of the sufficiency of the petition. (*Robison, supra,* 78 Cal.App.4th at p. 456.)

*Hensler* involved an ordinance enacted pursuant to the Map Act that prohibited the construction of residential units on ridge lines. (*Hensler, supra,* 8 Cal.4th at pp. 7–8.) The owner of a 300-acre tract of land filed an action for inverse condemnation, claiming that this ordinance precluded him from developing 40 percent of the tract. (*Ibid.*) Relying on the tenet that a legislative body must have the option of rescinding an enactment rather than pay compensation for a reduction in the value of affected land, *Hensler* concluded a cause of action for inverse condemnation necessarily includes a challenge to the validity of the enactment as applied to a particular piece of property and the need to exhaust the related administrative remedies. Otherwise, the landowner would have the power to compel the legislative body to exercise its power of eminent domain. (*Id.* at pp. 12, 13–14, 24–25.) As a result, the cause of action for inverse condemnation "aris[es] out of [the] application of a land-use regulation authorized" under the Map Act or is a facial challenge to the enactment under the Planning and Zoning Law, and is therefore subject to their long-expired limitations periods. (8 Cal.4th at p. 23; *id.* at pp. 24–26.)

In *Branciforte Heights, LLC v. City of Santa Cruz* (2006) 138 Cal.App.4th 914 [42 Cal.Rptr.3d 96] (*Branciforte Heights*), a landowner sought to compel a city to accept a dedication of park land rather than the "in lieu" fees that the city chose to impose as a condition of its approval of a development project, alternatives available to a local government under a provision of the Map Act. (138 Cal.App.4th at p. 919.) As the land use regulation at issue imposed a fee as a condition of approval, the cause of action could be considered as arising both out of the general provision of the Map Act and the Fee Act. (138 Cal.App.4th at p. 926.) *Branciforte Heights* concluded that (as a matter of legislative intent) where a property owner invokes the protest procedure of the Fee Act, its longer limitations period applies; "[c]ontrariwise, where a party does not comply with the fee protest procedures . . . , a traditional mandate action must be brought within the . . . statute of limitations generally applicable to subdivision decisions." (138 Cal.App.4th at p. 928.)[8]

---

[8] Plaintiffs also cite *Ponderosa Homes, Inc. v. City of San Ramon* (1994) 23 Cal.App.4th 1761 [29 Cal.Rptr.2d 26] as standing for the proposition that the Fee Act's limitations period controls over the Map Act's where a challenge to a fee is involved. As the case does not at any

It is undisputed that plaintiff trusts purported to file a protest pursuant to the Fee Act. The question is whether the conditions imposed on the development of their land comes within this act.

■ As noted above, the Fee Act applies to an attack on fees, dedications, reservations, or "other exactions." Plaintiffs do not contend that the conditions at issue come within any of the specifically named conditions in section 66020. Rather, they insist that the nebulous catchall that concludes this series of terms embraces their situation. As they concede in their brief, " '[F]ees' and 'dedications' do denote a conveyance of an interest in money (fees) or an interest in real property (dedications), and 'reservations' have a specific Map Act definition of how they must be implemented in order to qualify as legally valid . . . ." Section 66000, subdivision (b) defines "fee" as a "monetary exaction" other than a "tax or special assessment." A dedication is the transfer of an interest in real property to a public entity for the public's use. (*Branciforte Heights, supra,* 138 Cal.App.4th at p. 927 & fn. 7; *Rohn v. City of Visalia* (1989) 214 Cal.App.3d 1463, 1470 [263 Cal.Rptr. 319]; see § 66475 et seq. [regulating various types of dedications].) A reservation is an offer to transfer an interest in real property to a public agency for "parks, recreational facilities, fire stations, libraries, or other public uses," which terminates automatically within two years after the completion and acceptance of all improvements unless the agency enters into an agreement to acquire the interest and compensate the landowner at fair market value.[9] (See §§ 66479–66481.)

Neither party cites to *Williams Communications v. City of Riverside* (2003) 114 Cal.App.4th 642 [8 Cal.Rptr.3d 96], which found that a per-foot assessment imposed in connection with a permit to lay cable in conduit under city streets was not a fee but was nonetheless an "exaction" within the meaning of section 66020. (*Williams Communications,* at pp. 645, 658.) "The statutes do not define 'exaction' but the term is generally defined to include a '*compensation* arbitrarily or wrongfully demanded.' " (*Id.* at p. 658, italics added.) This indicates that the usual and ordinary meaning of the word "exaction," the first step in the interpretation of a statute

---

point address this issue expressly (simply citing the Fee Act limitations period), it is not authority for that proposition. (*In re Randy J.* (1994) 22 Cal.App.4th 1497, 1505 [28 Cal.Rptr.2d 152].)

[9] At the same time, they suggest that the conditions on Lot Q amount to a de facto reservation. However, as there is neither any offer nor any proposed transfer of an interest in their property, their suggestion fails.

(*Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 164 [128 Cal.Rptr.2d 65] (*Guillemin*)), does not include land use restrictions, which are not any form of payment.[10]

■ The interpretation that plaintiffs champion violates the intrinsic interpretive principle of *ejusdem generis*, under which we should construe general terms following specific terms as embracing only objects similar in nature to the specific terms. (*Engelmann v. State Bd. of Education* (1991) 2 Cal.App.4th 47, 56, fn. 11 [3 Cal.Rptr.2d 264].) As plaintiffs concede, the specific terms in section 66020 all involve divesting a developer of either money or a possessory interest in the subject property. The present land use conditions at issue do not result in either consequence; they are simply a restriction on the manner in which plaintiffs may use their property.

It also violates the principle that we must construe related provisions in harmony. (*Guillemin, supra*, 104 Cal.App.4th at p. 164.) If a plaintiff prevails under the Fee Act, "the court shall direct the local agency to *refund* the unlawful portion of the payment . . . or *return* the unlawful portion of the exaction imposed." (§ 66020, subd. (e), italics added.) Neither of those verbs would apply in their ordinary sense if exaction included land use restrictions, because they do not involve a transfer of anything to the local agency that must be refunded or returned.

Finally, we note that subdivision (c) of the statute, which involves the imposition of "a requirement for construction of [public] improvements or facilities," suggests the type of other condition at which the catchall provision is aimed. (§ 66020, subd. (c).) This again requires the expenditure of money but in a form different than a fee or any transfer of interest in real property.

Plaintiffs contend that "exaction" must be broad enough to include land use restrictions as a condition of approval in order to reach legislative usurpation of part of the unencumbered value of a property. Nothing, however, prevents a property owner from seeking redress for any reduction in value under the general Map Act rather than the more targeted Fee Act.

■ Consequently, the present cause of action does not arise under the Fee Act, and plaintiffs' attempt to invoke its protest procedure and extended limitations period was ineffectual. Their petition was therefore untimely served on defendant City under the limitations period of the Map Act.

---

[10] The treatise that plaintiffs cite, which calls for an expansive interpretation of "exaction," does not include anything other than fees, interests in real property, and expenditures for onsite or offsite public improvements, facilities, equipment, or other "public amenities." (Abbott et al., Exactions and Impact Fees in California (2001 ed.) Defining the Terms, p. 15.) All of these involve some form of payment or transfer of an interest. This chapter does not mention land use regulations as a species of exaction.

## Disposition

The stipulation to augment the record and the motion for judicial notice are denied. The judgment is affirmed.

Scotland, P. J., and Raye, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 11, 2007, S152116.