Filed 10/17/13

# IN THE SUPREME COURT OF CALIFORNIA

STERLING PARK, L.P., et al., )
)
      Plaintiffs and Appellants, )
)       S204771
      v. )
)       Ct.App. 6 H036663
CITY OF PALO ALTO, )
)       Santa Clara County
      Defendant and Respondent. )    Super. Ct. No. 1-09-CV154134
_____ )

A developer wanted to build 96 condominiums on a parcel of land. As a condition of obtaining a permit to do so, the city required the developer to set aside 10 condominium units as below market rate housing and make a substantial cash payment to a city fund. The developer proceeded with the construction but challenged in court these requirements pursuant to a statute that permits a developer to proceed with a project while also "protest[ing] the imposition of any fees, dedications, reservations, or other exactions imposed on a development project." (Gov. Code, § 66020, subd. (a).)[1]

We must decide whether section 66020 applies. If it does not, it appears another statute would apply, and that statute would make this action untimely. (See § 66499.37.) Specifically, we must decide whether the requirements at issue

---

**1**     All further statutory references are to the Government Code unless otherwise indicated.

constitute the imposition of "any fees . . . or other exactions" under section 66020, subdivision (a). The trial court and Court of Appeal held that this statute only governs fees imposed "for the purpose of defraying all or a portion of the cost of public facilities related to the development project." ( 66000, subd. (b) [defining "fee"].) Because the protested requirements were imposed for other purposes, the courts further held, section 66020 does not apply, and this action is untimely.

We conclude otherwise. Even if the requirements at issue here were not "fees" under section 66020, they were "other exactions." Accordingly, the statutory scheme permitting a challenge to the requirements while the project proceeds applies here.

## FACTUAL AND PROCEDURAL HISTORY

We take these facts largely from the Court of Appeal's opinion.

Plaintiffs Sterling Park, L.P. and Classic Communities, Inc. (collectively, Sterling Park) owned two lots totaling 6.5 acres on West Bayshore Road in the City of Palo Alto (the City). Sterling Park planned to demolish existing commercial improvements and construct 96 residential condominiums on the site. The proposed development was subject to the City's below market rate housing program, which is set forth in the Palo Alto Municipal Code. Section 18.14.030, subdivision (a), of that code provides, "Developers of projects with five or more units must comply with the requirements set forth in Program H-36 of the City of Palo Alto Comprehensive plan."

As pertinent here, Program H-36 requires that housing projects involving the development of five or more acres must provide at least 20 percent of all units as below market rate units. The developer must agree to one or more of certain requirements or equivalent alternatives that the City accepts. One of the requirements applicable to Sterling Park's project is that three-fourths of the below market rate units be affordable to households in the 80 to 100 percent of median

2

income range.  One-fourth of the units may be affordable to the higher range of between 100 to 120 percent of the county's median income.  The developer may provide off site units or vacant land if providing on site units is not feasible.  If no other alternative is feasible, the City may accept a cash payment to the City's housing development fund in lieu of providing below market rate units or land.  The in-lieu payment for projects of five acres or more is 10 percent of the greater of the actual sales price or fair market price of each unit.  The City requires the below market rate units to be sold to qualifying buyers it selects.  To implement the requirement, the City takes an option to purchase the units for the specified below-market-rate price, which it generally then assigns to the buyer it selects.

Sterling Park submitted its initial application for project approval in 2005.  The City's planning staff found the project would not cause any significant adverse environmental impact, and the City's architectural review board recommended approval of the design and site plan in March 2006.

In a letter dated June 16, 2006, the City stated the terms of an agreement between Sterling Park and the City's planning staff under which Sterling Park agreed to provide 10 below market rate units on the project site and pay in-lieu fees of 5.3488 percent of the actual selling price or fair market value of the market rate units, whichever was higher.  Classic Communities, Inc.'s vice president executed the letter on June 19, 2006.  On that date, the city council approved the project.

The City approved Sterling Park's application for a tentative subdivision map on November 13, 2006, and for a final subdivision map on September 10, 2007.  A document entitled "Regulatory Agreement Between Sterling Park, LP and City of Palo Alto Regarding Below Market Rate Units" was executed on September 11, 2007, and recorded on November 16, 2007.  This document referred to and attached the June 16, 2006 letter.

3

Over a year later, when the new units were being finished, the City began requesting conveyance of the below-market-rate designated homes. On July 13, 2009, Sterling Park submitted a "notice of protest" to the City, claiming the prior agreements were signed under duress and arguing that the below market rate requirements are invalid. When the City failed to respond to the protest, Sterling Park filed this action on October 5, 2009. It sought an injunction and a judicial declaration that the below market rate requirements are invalid and "the City may not lawfully impose such [below market rate] affordable housing fees or exactions as a condition of providing building permits or other approvals for the Project." Its third cause of action cited sections 66020 and 66021 and sought "restitution or equitable relief for the compelled conveyance of houses under restrictive terms."

The City moved for summary judgment on statute of limitations grounds, arguing that the action is untimely under section 66499.37. The trial court agreed and granted the motion. Ultimately, the court entered judgment in the City's favor. Sterling Park appealed.

The Court of Appeal affirmed the judgment. Relying heavily on an earlier decision from the same appellate district (*Trinity Park, L.P. v. City of Sunnyvale* (2011) 193 Cal.App.4th 1014 (*Trinity Park*)), the court held that section 66020 does not apply to this case, and that the action is untimely under section 66499.37.

We granted Sterling Park's petition for review to determine which time limits — those of section 66020 or those of section 66499.37 — govern this action.

## II. DISCUSSION

We must decide which of two possible statutes of limitations applies here.

Section 66499.37, part of the Subdivision Map Act (see § 66410), provides as relevant: "Any action or proceeding to attack, review, set aside, void, or annul the decision of an advisory agency, appeal board, or legislative body concerning a

4

subdivision, or any of the proceedings, acts, or determinations taken, done, or made prior to the decision, or to determine the reasonableness, legality, or validity of any condition attached thereto, including, but not limited to, the approval of a tentative map or final map, shall not be maintained by any person unless the action or proceeding is commenced and service of summons effected within 90 days after the date of the decision."

It seems clear, and no one disputes, that section 66499.37 is broad enough that it would apply unless another statute applies instead. It is also undisputed that this action would be untimely under section 66499.37; the action was commenced more than 90 days after the decision that it challenges. But Sterling Park argues that another statute, section 66020, governs this case.

Section 66020, part of the Mitigation Fee Act (§ 66000.5, subd. (a)), provides as relevant:

"(a) Any party may protest the imposition of any fees, dedications, reservations, or other exactions imposed on a development project . . . by a local agency by meeting both of the following requirements:

"(1) Tendering any required payment in full or providing satisfactory evidence of arrangements to pay the fee when due or ensure performance of the conditions necessary to meet the requirements of the imposition.

"(2) Serving written notice on the governing body of the entity, which notice shall contain all of the following information:

"(A) A statement that the required payment is tendered or will be tendered when due, or that any conditions which have been imposed are provided for or satisfied, under protest.

"(B) A statement informing the governing body of the factual elements of the dispute and the legal theory forming the basis for the protest.

"(b)  Compliance by any party with subdivision (a) shall not be the basis for a local agency to withhold approval of any map, plan, permit, zone change, license, or other form of permission, or concurrence . . . incident to, or necessary for, the development project. . . .

"(c) . . .

"(d)(1)  A protest filed pursuant to subdivision (a) shall be filed at the time of approval or conditional approval of the development or within 90 days after the date of the imposition of the fees, dedications, reservations, or other exactions to be imposed on a development project.  Each local agency shall provide to the project applicant a notice in writing at the time of the approval of the project or at the time of the imposition of the fees, dedications, reservations, or other exactions, a statement of the amount of the fees or a description of the dedications, reservations, or other exactions, and notification that the 90-day approval period in which the applicant may protest has begun.

"(2)  Any party who files a protest pursuant to subdivision (a) may file an action to attack, review, set aside, void, or annul the imposition of the fees, dedications, reservations, or other exactions imposed on a development project by a local agency within 180 days after the delivery of the notice.  Thereafter, notwithstanding any other law to the contrary, all persons are barred from any action or proceeding or any defense of invalidity or unreasonableness of the imposition. . . .

"(e)  If the court finds in favor of the plaintiff in any action or proceeding brought pursuant to subdivision (d), the court shall direct the local agency to refund the unlawful portion of the payment, with interest at the rate of 8 percent per annum, or return the unlawful portion of the exaction imposed."

A related statute, section 66021, subdivision (a), provides as relevant: "Any party on whom a fee, tax, assessment, dedication, reservation, or other

6

exaction has been imposed, the payment or performance of which is required to obtain governmental approval of a development . . . or development project, may protest the establishment or imposition of the fee, tax, assessment, dedication, reservation, or other exaction as provided in Section 66020."

Sterling Park argues that section 66020 applies here. It further argues that this action is timely under that statute because the City never provided the notice that section 66020, subdivision (d)(1), requires.[2] Invoking the " 'rule of statutory construction that a special statute dealing expressly with a particular subject controls and takes priority over a general statute,' " one court has held that when section 66020 does apply, its time limits govern the case, not those of the more general section 66499.37. (*Branciforte Heights, LLC v. City of Santa Cruz* (2006) 138 Cal.App.4th 914, 924.) We agree. This construction comports with "the Legislature's understanding . . . that the Mitigation Fee Act generally governed developer's protests against fees imposed upon developments." (*Id*. at p. 928.)

Accordingly, we must decide whether section 66020 applies. If it does, then section 66499.37 does not apply; contrariwise, if section 66020 does not apply, then section 66499.37 does.

The Legislature originally enacted the substance of section 66020 in 1984 as Government Code, former section 65913.5. (Stats. 1984, ch. 653, § 1, p. 2411; Sen. Bill No. 2136 (1983-1984 Reg. Sess.) (Senate Bill 2136); see *Shapell Industries, Inc. v. Governing Board* (1991) 1 Cal.App.4th 218, 241.) After reviewing the legislative history, the *Shapell Industries* court explained the legislative purpose behind the enactment. "Prior to the enactment of this statute, a developer could not challenge the validity of fees imposed on a residential

---

[2]     We express no opinion on this further argument, which is not before us.

development without refusing to pay them. (*Pfeiffer v. City of La Mesa* (1977) 69 Cal.App.3d 74, 78.) Since payment is a condition of obtaining the building permit, a challenge meant that the developer would be forced to abandon the project. The bill was drafted to correct this situation. It provided a procedure whereby a developer could pay the fees under protest, obtain the building permit, and proceed with the project while pursuing an action to challenge the fees. If the action were successful, the fees would be refunded with interest." (*Shapell Industries, Inc. v. Governing Board*, *supra*, at p. 241.)

Sterling Park argues that this purpose applies here; it should be allowed to pay the required amount or "ensure performance" of the below market rate requirements (see § 66020, subd.(a)(1)) under protest and proceed with the project while pursuing an action to challenge the requirements. The City argues, on the other hand, that the statute does not apply, and Sterling Park had to delay the construction project as the price of challenging the requirements.

The question concerning section 66020's applicability comes down to this: Are the requirements at issue "any fees, dedications, reservations, or other exactions" under section 66020, subdivision (a)? The Court of Appeal held that they are not.

*Trinity Park*, *supra*, 193 Cal.App.4th 1014, the case on which the Court of Appeal primarily relied in reaching its conclusion, supports the City's argument. *Trinity Park*, and the Court of Appeal here, interpreted the phrase "any fees, dedications, reservations, or other exactions" as being limited to fees as defined in section 66000, subdivision (b): "a monetary exaction . . . that is charged by a local agency to the applicant in connection with approval of a development project *for the purpose of defraying all or a portion of the cost of public facilities related to the development project* . . . ." (Italics added.) The Court of Appeal also held that

8

the requirements at issue here were not imposed for the purpose of defraying the cost of facilities related to the proposed development.

In reaching its conclusion, the *Trinity Park* court noted that the Mitigation Fee Act, which includes section 66020, does not define the term "exaction." (*Trinity Park*, *supra*, 193 Cal.App.4th at p. 1034.) In seeking its own definition, and reading section 66020 in the context of the overall statutory scheme, the court cited several provisions of the Mitigation Fee Act that use the word "exaction" or "exactions" in the context of defraying the cost of services or facilities related to a project. (*Trinity Park*, at p. 1035 [citing §§ 66000, subd. (b), 66005, subd (a), and 66010, subd. (b)].)[3] It viewed these statutes' use of this word in that context as meaning that section 66020 is limited to that context: "Given the Mitigation Fee Act's express references to a fee or exaction imposed to defray the cost of public facilities related to the development, and the express requirement that a fee or exaction not exceed a reasonable cost, we find that the plain language of the

---

**3** Section 66000, subdivision (b), provides as relevant: " 'Fee' means a monetary *exaction* other than a tax or special assessment, whether established for a broad class of projects by legislation of general applicability or imposed on a specific project on an ad hoc basis, that is charged by a local agency to the applicant in connection with approval of a development project for the purpose of defraying all or a portion of the cost of public facilities related to the development project . . . ." (Italics added.)

Section 66005, subdivision (a), provides as relevant: "When a local agency imposes any fee or *exaction* as a condition of approval of a proposed development . . . , or development project, those fees or *exactions* shall not exceed the estimated reasonable cost of providing the service or facility for which the fee or *exaction* is imposed." (Italics added.)

Section 66010, subdivision (b), provides: " 'Fee' means a monetary *exaction* or a dedication, other than a tax or special assessment, which is required by a local agency of the applicant in connection with approval of a development project for the purpose of defraying all or a portion of the cost of public facilities related to the development project, but does not include fees for processing applications for governmental regulatory actions or approvals." (Italics added.)

9

pertinent provisions of the Mitigation Fee Act shows that the Legislature intended the 180-day limitations period provided by section 66020, subdivision (d)(2) to apply to an exaction imposed for the purpose of 'defraying all or a portion of the cost of public facilities related to the development project.' " (*Trinity Park*, *supra*, at pp. 1035-1036, quoting § 66000, subd. (b).)

The *Trinity Park* court also cited a statement in one of our cases that the term "fees," as used in section 66020, "applies only to 'development fees' that alleviate the effects of development on the community and does *not* include fees for specific regulations or services." (*Barratt American, Inc. v. City of Rancho Cucamonga* (2005) 37 Cal.4th 685, 696 (*Barratt*).)  It determined that what we said about fees "also applies to an 'other exaction' under the canon of statutory construction knows as *ejusdem generis* . . . ." (*Trinity Park*, *supra*, 193 Cal.App.4th at p. 1036.)

The canon of *ejusdem generis* "simply means that if a statute contains a list of specified items followed by more general words, the general words are limited to those items that are similar to those specifically listed." (*Clark v. Superior Court* (2010) 50 Cal.4th 605, 614.)  "It implies the addition of *similar* after the word *other*." (Scalia & Garner, Reading Law:  The Interpretation of Legal Texts (2012) p. 199.)

The *Trinity Park* court explained its view of how the canon applied there: "Applying the rule of *ejusdem generis* to the enumeration of 'fees, dedications, reservations, or other exactions' in section 66020, it is apparent that 'exactions' is a more general word that follows a list of specified items (fees, dedications, and reservations).  The meaning of the phrase 'other exactions' must therefore be limited to exactions of like kind and character as the fees, dedications and reservations listed in section 66020 that are imposed for the purpose of 'defraying all or a portion of the cost of public facilities related to the development project'

10

(§ 66000, subd. (b)) or, as stated by the California Supreme Court, to 'alleviate the effects of development on the community . . . .' (*Barratt*, *supra*, 37 Cal.4th at p. 696.)" (*Trinity Park*, *supra*, 193 Cal.App.4th at p. 1036.)

The *Trinity Park* court also viewed the legislative history behind section 66020 as showing "the Legislature intended that the Mitigation Fee Act would allow a developer to challenge a fee, dedication, reservation or other exaction imposed on a development project and obtain a refund where the exaction exceeded the cost or burden of the project." (*Trinity Park*, *supra*, 193 Cal.App.4th at p. 1039.) "Accordingly," the court stated, "an exaction constitutes an 'other exaction' within the meaning of the Mitigation Fee Act only where the exaction was (1) imposed by a local agency as a condition of approval of a development project; and (2) for the purpose of 'defraying all or a portion of the cost of public facilities related to the of public facilities related to the development project.' (§ 66000, subd. (b); see *Barratt*, *supra*, 37 Cal.4th at p. 696.)" (*Ibid.*)

The *Trinity Park* court erred in interpreting the term "other exactions" so narrowly. It is certainly true that the Legislature intended to allow a developer to challenge a fee or exaction that exceeded the cost or burden of the project. But nothing in the statutory language, the statutory context, or the statute's purpose suggests it is *limited* to that situation. *Trinity Park*'s interpretation is contrary to other courts' far more reasonable interpretation and would lead to absurd results the Legislature cannot have intended.

*Trinity Park* used the canon of *ejusdem generis* to conclude that section 66020's words "any fees, dedications, reservations, or other exactions" mean nothing more than fees as defined in section 66000, subdivision (b). But this view deprives the words "any" and "or other exactions" of all meaning. As we said in interpreting another statute within the Mitigation Fee Act, "[t]he use of the word 'any' and the inclusion of several disjunctives to link essentially synonymous

11

words all serve to *broaden* the applicability of the provision." (*Utility Cost Management v. Indian Wells Valley Water Dist.* (2001) 26 Cal.4th 1185, 1191 [referring to § 66022], italics added.) The words "any . . . other exactions" must have some meaning to broaden the statute's reach beyond merely a specific definition of fees.

Another court also applied the canon of *ejusdem generis* to these same words and reached a quite different result. In *Fogarty v. City of Chico* (2007) 148 Cal.App.4th 537 (*Fogarty*), a city council had precluded a subdivision developer from building on a certain portion of its property. The developer sued, purporting to use section 66020's protest procedures. As here, the question arose whether section 66020 applied. Relying on the words "or other exactions," the developer had argued that the statute governed the use restriction the city council had imposed. The Court of Appeal disagreed, in part due to its own application of the canon of *ejusdem generis*. After explaining what the canon is, the court noted that "the specific terms in section 66020 all involve *divesting a developer of either money or a possessory interest in the subject property*. The present land use conditions at issue do not result in either consequence; they are simply a restriction on the manner in which plaintiffs may use their property." (*Fogarty*, *supra*, at p. 544, italics added.)

*Fogarty* also relied on the analysis of an earlier decision interpreting this same statutory language. (*Williams Communications v. City of Riverside* (2003) 114 Cal.App.4th 642 (*Williams*).) As *Fogarty* explained, *Williams* had "found that a per-foot assessment imposed in connection with a permit to lay cable in conduit under city streets was not a fee but was nonetheless an 'exaction' within the meaning of section 66020." (*Fogarty*, *supra*, 148 Cal.App.4th at p. 543.)

In *Williams*, the trial court had ruled the assessment did not come within section 66020 "because the 'City did not purport to impose the subject license fee

12

on plaintiff to mitigate or defray the cost of any alleged impacts on public improvements or facilities.' " (*Williams*, *supra*, 114 Cal.App.4th at p. 647.) The Court of Appeal reversed. Citing section 66000, subdivision (b), the court agreed that the assessment "was not a fee within the meaning of this definition because it was not assessed for the purpose of defraying the cost of [the] project." (*Williams*, *supra*, at p. 658.) But it determined the assessment was an "other exaction" under section 66020, subdivision (a). As did the *Trinity Park* court, the *Williams* court noted that the statutes do not define "exaction." So it turned to other sources for a definition. "[T]he term is generally defined to include a 'compensation arbitrarily or wrongfully demanded.' (Black's Law Dict. (7th ed. 1999) p. 581, col. 2; Webster's 3d New Internat. Dict. (1993) p. 790, col. 2: '[T]he levying or demanding of some benefit (as a fee or gratuity) that is not lawfully or properly due.')" (*Williams*, *supra*, at p. 658.) The court found that a certain statute had prohibited certain charges. Due partly to this definition, it also held that the "Legislature used the collective term 'other exactions' in section 66020 to include all such [prohibited] charges." (*Ibid.*)

The *Williams* court rejected the argument that "the Mitigation Fee Act only applies to fees, and not anything else. This argument derives from the definition of fee in section 66000. While we agree . . . that the payment was not a fee, as defined in section 66000, subdivision (b), it was an 'other exaction' as defined in sections 66020 and 66021. Because the sum charged was an 'other exaction,' the Mitigation Fee Act is applicable." (*Williams*, *supra*, 114 Cal.App.4th at p. 659.)

The *Fogarty* court concluded that the definition cited in *Williams* "indicates that the usual and ordinary meaning of the word 'exaction,' the first step in the interpretation of a statute [citation], does not include land use restrictions, which are not any form of *payment*." (*Fogarty*, *supra*, 148 Cal.App.4th at pp. 543-544, italics added.) Accordingly, *Fogarty* held that section 66499.37, and not section

13

66020, governed the challenge to the use restriction of that case. (*Fogarty*, *supra*, at p. 540.)

In combination, *Williams* and *Fogarty* indicate that the term "other exactions" under section 66020 at least includes actions that divest the developer of money or a possessory interest in property, but it does not include land use restrictions. This interpretation conforms to the statute's plain language far better than does *Trinity Park*'s excessively narrow interpretation. Divesting the developer of money or a possessory interest is similar to imposing a fee, dedication, or reservation. This interpretation also conforms to the legislative purpose behind the statute.

We have explained that the Mitigation Fee Act "sets forth procedures for protesting the imposition of fees and *other monetary exactions* imposed on a development by a local agency. As its legislative history evinces, the Act was passed by the Legislature 'in response to concerns among developers that local agencies were imposing development fees for purposes unrelated to development projects.' " (*Ehrlich v. City of Culver City* (1996) 12 Cal.4th 854, 864, italics added, quoting *Centex Real Estate Corp. v. City of Vallejo* (1993) 19 Cal.App.4th 1358, 1361.) We described the language in section 66021 that is essentially identical to the relevant language in section 66020 as "a broadly formulated and unqualified authorization" that "is consistent with the view that the Legislature intended to require *all* protests to a development fee that challenge the sufficiency of its relationship to the effects attributable to a development project — regardless of the legal underpinnings of the protest — to be channeled through the administrative procedures mandated by the Act." (*Ehrlich v. City of Culver City*, *supra*, at p. 866.)

Under *Trinity Park*'s interpretation, a developer may pay under protest a fee charged to defray the cost of facilities related to the development and then

14

challenge the fee as excessive while proceeding with the development; but it may *not* so challenge any *other* fee or exaction. However, the Legislature was not concerned merely about excessive fees but also about " 'fees for purposes unrelated to' " the project. (*Ehrlich v. City of Culver City*, *supra*, 12 Cal.4th at p. 864.) The Legislature did not want developers to have to choose between either paying the fee with no recourse or delaying the project while challenging the fee, as previous law had required. (*Shapell Industries, Inc. v. Governing Board*, *supra*, 1 Cal.App.4th at p. 241.) But *Trinity Park*'s interpretation would mean section 66020 does not apply to fees imposed for purposes entirely unrelated to the project. Under that interpretation, if a fee or other exaction is not merely excessive but truly arbitrary, the developer would either have to pay it with no recourse, or delay the entire development to challenge the fee or exaction. In other words, the more unreasonable the fee or exaction, the less recourse the developer would have. This perverse interpretation is not only contrary to legislative intent, it is contrary to the broad language — "any fees, dedications, reservations, or other exactions" — the Legislature used in defining section 66020's reach.

The *Williams* court agreed with the developer that " '[u]nder the [trial] court's reading of the statute, . . . *no* illegal monetary charge would fall within the purview of the statute, yet the very purpose of the statute is to challenge the lawfulness of monetary charges imposed on persons who seek permits and licenses.' " (*Williams*, *supra*, 114 Cal.App.4th at p. 658.) This argument is slightly exaggerated, because under the trial court's interpretation in *Williams*, which was similar to *Trinity Park*'s, section 66020's pay-under-protest provision would apply to fees that relate to the project but are arguably excessive. But its main point is correct. Under *Trinity Park*'s reading, the statute would only govern fees that are related to the project but arguably excessive; it would not govern fees or other exactions that are blatantly arbitrary and unlawful. This interpretation

15

would be contrary to our explanation that section 66020 was intended to apply to "*all* protests to a development fee that challenge the sufficiency of its relationship to the effects attributable to a development project — regardless of the legal underpinnings of the protest." (*Ehrlich v. City of Culver City*, *supra*, 12 Cal.4th at p. 866.)

The *Trinity Park* court relied heavily for its narrow interpretation on our opinion in *Barratt*, *supra*, 37 Cal.4th 685. (See *Trinity Park*, *supra*, 193 Cal.App.4th at pp. 1032, 1036-1037, 1039.) In *Barratt*, we held that the time limit provisions of sections 66016 and 66022, and not those of section 66020, govern a challenge to building permit fees imposed under section 66014. We reached this conclusion because section 66014, subdivision (c), provides: "Any judicial action or proceeding to attack, review, set aside, void, or annul the ordinance, resolution, or motion authorizing the charge of a fee subject to this section shall be brought pursuant to section 66022." (See also § 66016, subd. (e) [containing a similar reference to § 66022].) Because sections 66014 and 66016 expressly refer to section 66022, we concluded that "the applicable remedy and limitations period for excessive building fees claims under section 66104 are found in sections 66016 and 66022, not in sections 66020 and 66021." (*Barratt*, *supra*, at p. 692.) In the course of our discussion, we made the statement the *Trinity Park* court repeatedly cited: "Thus, section 66020, by its own terms, applies only to 'development fees' that alleviate the effects of development on the community and does *not* include fees for specific regulations or services." (*Barratt*, *supra*, at p. 696.) But this statement was made in the context of a statutory scheme that expressly provided that a challenge to fees imposed under section 66014 was subject to the provisions of 66022 rather than 66020. What we said in *Barratt* about fees governed by section 66014 (and hence § 66022) has no bearing on whether the requirements at

16

issue here, which are *not* governed by either section 66014 or 66022, are "other exactions" under section 66020, subdivision (a).

The procedure established in section 66020, which permits a developer to pay or otherwise ensure performance of the exactions, and then challenge the exactions while proceeding with the project, makes sense regarding monetary exactions. By the nature of things, some conditions a local entity might impose on a developer, like a limit on the number of units (see *Fogarty*, *supra*, 148 Cal.App.4th 537), cannot be challenged while the project is being built. Obviously, one cannot build a project now and litigate later how many units the project can contain — or how large each unit can be, or the validity of other use restrictions a local entity might impose. But the validity of monetary exactions, or requirements that the developer later set aside a certain number of units to be sold below market value, can be litigated while the project is being built. In the former situation — where the nature of the project must be decided before construction — it makes sense to have tight time limits to minimize the delay. In the latter situation — where the project can be built while litigating the validity of fees or other exactions — it makes sense to allow payment under protest followed by a challenge and somewhat less stringent time limits.

For these reasons, we believe *Fogarty* and *Williams* correctly interpreted section 66020. The statute governs conditions on development a local agency imposes that divest the developer of money or a possessory interest in property, but not restrictions on the manner in which a developer may use its property. Section 66499.37 governs the latter restrictions. (*Fogarty*, *supra*, 148 Cal.App.4th at pp. 540, 544.)

The City argues that the requirements it imposed under its below market rate program are not exactions but merely land use regulations of the kind *Fogarty, supra*, 148 Cal.App.4th 537, found section 66020 does not govern. We

17

disagree.  The below market rate program is different from a land use regulation of the type at issue in *Fogarty* (a limit on the number of units that can be built); instead, it is similar to a fee, dedication, or reservation under section 66020.  The program offers developers two options, either of which, by itself, would constitute an exaction.  The imposition of the in-lieu fees is certainly similar to a fee.  Moreover, the requirement that the developer sell units below market rate, including the City's reservation of an option to purchase the below market rate units, is similar to a fee, dedication, or reservation.  It may be, as the City argues, that under traditional property law, an option to purchase creates no estate in the land.  But a purchase option is a sufficiently strong interest in the property to require compensation if the government takes it in eminent domain.  (*County of San Diego v. Miller* (1975) 13 Cal.3d 684, 691-693.)  Compelling the developer to give the City a purchase option is an exaction under section 66020.  Because of this conclusion, we need not decide whether forcing the developer to sell some units below market value, by itself, would constitute an exaction under section 66020.

The City also notes that subdivision (e) of section 66020 requires a local agency that loses the action "to refund the unlawful portion of the payment" with interest "or return the unlawful portion of the exaction imposed."  Based on this language, it argues that an approval condition, such as requiring some of the units to be sold below market price, "that does not result in transfer to the public agency of money or property that can be returned in whole or in part to a successful plaintiff cannot be an 'exaction' subject to payment under protest, and delayed litigation, under . . . section 66020."  We disagree.  Subdivision (e) of section 66020 concerns remedies for a prevailing plaintiff and does not limit the scope of section 66020, subdivision (a).  Subdivision (a)(1) of that section permits the protesting party *either* to pay the amount in full *or* "provid[e] satisfactory evidence

18

of arrangements to pay the fee when due or ensure performance of the conditions . . . ." Obviously, if the protesting party does the latter, there will be no payment to repay or exaction to return. This does not make section 66020 self-canceling whenever the developer provides the required satisfactory evidence and does not make an actual payment. It just means that a remedy will not include repayment of a payment that was never made.

The City also argues that Sterling Park's broad interpretation of section 66020 would "encourage 'chaos,' allowing developers to ask courts to micro-manage a municipality's permitting decisions by considering land-use approval conditions one by one rather than in relation to one another and to the entire development's potential community benefits and burdens," and "would conflict with CEQA, which requires a comprehensive analysis of a development proposal's foreseeable environmental impacts rather than piecemeal analyses of each feature or stage." (Citing Cal. Environmental Quality Act; Pub. Resources Code, § 21000 et seq.) Again, we disagree. There is nothing chaotic about section 66020's protest provisions and nothing that violates CEQA. The City borrows the word "chaos" from *Pfeiffer v. City of La Mesa*, *supra*, 69 Cal.App.3d at page 78. By enacting what is now section 66020, the Legislature intended to modify, not adopt, the law as stated in that case. (See *Shapell Industries, Inc. v. Governing Board, supra*, 1 Cal.App.4th at p. 241.)

The City argues that the Legislature did not intend for section 66020 to repeal section 66499.37 or "to provide a 'performance under protest' option for any and every condition to which a firm 90-day statute of limitations [under section 66499.37] otherwise would apply." The City is correct. Section 66020 applies only to "any fees, dedications, reservations, or other exactions," not to *all* conditions a local agency may impose on the use of property. But this argument does not support its position. The question here is not whether section 66020 has

19

repealed section 66499.37, but when each statute applies. The answer we give does not repeal section 66499.37 or make section 66020 apply to all conditions placed on the use of property; instead, it reconciles the two statutes.

"Finally," the City argues, "broad application of section 66020 would be unfair to the public, because section 66020 is asymmetric: It allows a developer, but not the public, to invoke its special procedure." This would argue against *any* application of section 66020. But the Legislature enacted it, and we cannot interpret it out of existence. Moreover, as noted, it is reasonable for the Legislature to impose strict time limits for litigation that can delay an entire development project but provide more relaxed limits (but ones that are still fairly tight) when the project can continue during the litigation.

The City also invokes legislative history to support its narrow interpretation. It quotes a statement by the legislator who introduced the bill enacting what is now section 66020 that, as the City puts it, "described it as addressing the increasing incidence, after enactment of Proposition 13, of local governments' using 'fee revenue to support planning and building activities.' " (Quoting a "Statement by Senator Leroy F. Greene on [Senate Bill] 2136 as amended June 21, 1984.") Even were a statement by an individual legislator relevant to our interpretation of a statute, this statement does not aid the City. The same statement also says: "If a housing developer finds a fee is exorbitant *or illegal*, he is faced with the dilemma of paying it so he can get the approval to proceed or going to court realizing his project will likely be halted until resolution. [¶] This measure sets up an orderly procedure so the housing developer can pay the fee under protest, take legal action within 180 days, and if he wins in court, be refunded the unlawful portion of the fee." (*Ibid.*, italics added.) Nothing in this statement suggests an intent to permit this "orderly procedure" to challenge a fee

20

that is excessive but to deny the same procedure when the fee is arbitrary and thus entirely illegal.

The City also cites a legislative analysis that, as the City describes it, "gave examples of the kinds of requirements that [the bill] would permit a developer to perform under protest: 'fees and dedications . . . to provide services such as schools, parks, capital facilities, etc.' " (Quoting Dept. Housing & Community Development, analysis of Sen. Bill No. 2136 (1983-1984 Reg. Sess.) as introduced Feb. 17, 1984, p. 1.) Again, nothing in this analysis suggests an intent to limit section 66020's reach in the way the *Trinity Park* court did. The use of the abbreviation "etc." at the end of the quoted language suggests the opposite — that the Legislature intended a broad application.

The City does make one correct argument. It argues that if we find section 66020 applies here, we should remand the matter to the Court of Appeal to decide any remaining issues. We agree. We express no opinion regarding the merits of the underlying action, or even regarding whether the action is timely under section 66020. We merely hold that section 66020 governs this case.

21

### III. CONCLUSION

We reverse the judgment of the Court of Appeal and remand the matter to that court for further proceedings consistent with this opinion. We also disapprove *Trinity Park, L.P. v. City of Sunnyvale*, *supra*, 193 Cal.App.4th 1014, to the extent it is inconsistent with this opinion.

CHIN, J.

WE CONCUR:

CANTIL-SAKAUYE, C.J.
KENNARD, J.
BAXTER, J.
WERDEGAR, J.
CORRIGAN, J.
LIU, J.

22

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Sterling Park, L.P. v. City of Palo Alto

_____

**Unpublished Opinion** XXX NP opn. filed 7/17/12, 6th Dist.
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S204771
**Date Filed:** October 17, 2013

_____

**Court:** Superior
**County:** Santa Clara
**Judge:** Kevin McKenney

_____

**Counsel:**

Sheppard, Mullin, Richter & Hampton, Robert J. Stumpf, Jr., James G. Higgins; Rutan & Tucker, David P. Lanferman; Rosen Bien Galvan & Grunfeld, Sanford Jay Rosen and Ernest J. Galvan for Plaintiffs and Appellants.

Molly S. Stump, City Attorney, Donald A. Larkin, Assistant City Attorney; Law Offices of Scott D. Pinsky, Scott D. Pinsky; Goldfarb & Lipman, Juliet E. Cox and Barbara E. Kautz for Defendant and Respondent.

Dennis J. Herrera, City Attorney (San Francisco), Christine Van Aken, Chief of Appellate Litigation, and Kristen A. Jensen, Deputy City Attorney, for League of California Cities, California State Association of Counties and City and County of San Francisco as Amici Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

David P. Lanferman
Rutan & Tucker
5 Palo Alto Square
3000 El Camino Real, Suite 200
Palo Alto, CA  94306-9814
(650) 320-1500

Juliet E. Cox
Goldfarb & Lipman
1300 Clay Street, Eleventh Floor
City Center Plaza
Oakland, CA  94612
(510) 836-6336