Filed 1/24/14  Winfield Design International v. City and County of San Francisco CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| WINFIELD DESIGN INTERNATIONAL, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, <br><br> Defendant and Respondent. | A136206 <br><br> (San Francisco County Super. Ct. No. CPF-12-511927) |

The City and County of San Francisco (City) issued a conditional-use permit approving a proposal by appellant Winfield Design International, Inc. (Winfield) to build a multiple unit residential building.  The permit included a number of restrictions, one of which (the condition) required Winfield to set aside seven units to be rented or sold at below-market rates.  Almost eight years later—after the building was constructed and occupied—the City issued a penalty against Winfield for violating the condition. Winfield brought an administrative challenge, but the City zoning administrator concluded that the challenge was untimely, determined that Winfield had violated the condition, and assessed prospective penalties of $250 for each day the violation continued unabated.

Winfield filed a petition for a writ of administrative mandamus (Code Civ. Proc., § 1094.5) in the superior court to overturn the zoning administrator's decision.  The City filed a demurrer, which was sustained on the ground that Winfield's challenge was barred

1

by the applicable statutes of limitation. We reach the same conclusion and affirm the judgment.

## I.
## FACTUAL AND
## PROCEDURAL BACKGROUND

A. *Winfield's Original Petition for a Writ of Mandamus.*

Winfield filed its original petition for a writ of administrative mandamus on February 10, 2012. The petition and judicially noticed material established that Winfield owned real property in San Francisco with street addresses on both 23rd and Harrison Streets. In August 2001, Winfield submitted an application to demolish an existing structure on the property and to construct a new residential building with 54 dwelling units. The San Francisco Board of Supervisors approved the application in June 2003 by granting a conditional-use permit that contained a number of restrictions, including the condition. The condition required the project to include seven "inclusionary housing units" (also known as below-market-rate (BMR) units) in accordance with the San Francisco Planning Code (Planning Code). Construction proceeded, and a certificate of completion for the new building was issued on May 17, 2007.

In May 2011, the City Planning Department notified Winfield that it was in violation of the condition. Specifically, the notice stated that Winfield had charged higher rents than were authorized for the below-market-rate units and had allowed one of these units to be occupied by the building manager. The notice also stated that a tenant in another one of these units had been evicted.

Winfield requested a hearing before the City zoning administrator. The administrator held a public hearing and issued a written decision concluding that Winfield had violated the Planning Code by failing to comply with the condition. Winfield was ordered to abate the violation by working with the Mayor's Office of Housing and to pay a prospective penalty of $250 per day for "each day the penalty continues unabated, excluding the period of time the Notice of Violation and Penalty has been pending. . . ." The order explained that "[n]o penalties are due at this time[;]

2

however, failure to take the compliance actions as noted above or appeal to the Board of Appeals within fifteen (15) days will result in accrual of penalties thereafter." Winfield appealed the decision to the City board of appeals, which upheld it on November 16, 2011.

The petition for a writ of mandamus declared that Winfield was making an " 'as applied' " challenge to an "illegal conditional use permit." It alleged that the condition, or the zoning administrator's decision upholding it, violated the Costa-Hawkins Rental Housing Act (Civ. Code, § 1954.52 et seq. (the Costa-Hawkins Act)); constituted a taking of private property for public use without compensation; was overly broad and vague in allowing the City "undue" discretion; violated Winfield's civil rights under 42 U.S.C. § 1983; resulted in arbitrary and excessive penalties; infringed on Winfield's rights under the state's unlawful detainer law; and violated the "judicial powers" clause of the California Constitution (Cal. Const., art. VI, § 1).

B.      The City's First Demurrer.

The City demurred to the petition on the ground that it was untimely because it was filed long after the expiration of the statutory 90-day period to challenge project decisions and subdivision-map approvals made by local agencies. (See Gov. Code, §§ 65009, subd. (c)(1)(E); 66499.37.)[1] The City pointed out that Winfield had failed to challenge within 90 days either the conditional-use permit when it was issued in 2003 or a tentative subdivision-map that was approved in 2005.

The trial court sustained the demurrer, but it allowed Winfield to amend its petition to the extent it could "allege facts supporting a claim that is not a challenge to the below market rate conditions of approval imposed by the City when it issued the conditional use permit for [Winfield's] project."

---

[1] All further statutory references are to the Government Code unless otherwise noted.

*C.    Winfield's First Amended Petition.*

In a first amended petition, Winfield again alleged the zoning administrator abused his discretion by enforcing the condition.  Winfield asserted the same or similar violations of various constitutional and civil rights as in the original petition.  But instead of directly challenging the condition, Winfield argued that its "non-compliance" was justified because the City was penalizing it, "in part," for evicting a tenant in one of the below-market-rate units.  Winfield alleged that it was "constrained from all future evictions of tenants under the [below-market-rate] program."

*D.    The City's Second Demurrer.*

The City demurred again.  It argued the first amended petition alleged no new facts but merely deleted the references to the conditions of approval and then requested the same relief.  The City asked the trial court to sustain the demurrer without leave to amend and to dismiss the petition.

The trial court recognized that Winfield was attempting to state a timely claim by alleging that it was being penalized for evicting a tenant, but the court found "plain" from reading the administrative decision that Winfield had *not* been penalized for that reason.  Instead, the court found that Winfield was penalized for failing to provide below-market-rate units as required by the condition.  The court concluded:  "[I]f we disregard the allusion to eviction, the [first amended petition] alleges nothing not found in the original petition."  It then sustained the demurrer without leave to amend and entered judgment for the City.

II.
DISCUSSION

*A.    The Standard of Review.*

Review of a complaint for sufficiency against a demurrer is guided by settled principles.  " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed.'  [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]

4

When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)

When a demurrer is based on a statute of limitations, it is not enough that the complaint shows the action may be barred. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) The defect must clearly and affirmatively appear on the face of the complaint. (*Ibid.*)

B.      *The Gravamen of Winfield's Pleadings.*

Although its appeal mostly involves issues related to the statute of limitations, Winfield first argues that the demurrer was improperly sustained because factual questions remained unresolved concerning Winfield's actual compliance with the condition. According to Winfield, "Triable issues of fact include whether, or to what extent the BMR [below-market-rate] rules were violated; and whether the $250 per day maximum penalty was justified." In support of its argument, Winfield points to comments the City attorney made about the below-market-rate units at the second demurrer hearing.

This argument is a belated attempt to recast the pleadings. Winfield's original petition attacked the validity of the condition, but it never alleged that the condition had actually been satisfied. The closest Winfield came to making such an allegation was a statement that it "attempted to comply with the BMR program." And Winfield's amended petition was no different, except that it tried to link the City enforcement efforts to Winfield's eviction of one of its tenants. As it had in the original petition, Winfield alleged it *attempted* to comply with the conditions of approval. It then sought to overturn the administrative decision on the ground that its constitutional and statutory rights were violated when it was punished for evicting a tenant. Nowhere in the pleading does

5

Winfield allege it complied with the condition.  Instead, it alleged that Winfield had *not* complied with the condition but was justified in doing so.

The gravamen of Winfield's pleadings was that the condition was illegal and unenforceable.  Winfield confirms this in the first sentence of its opening brief by stating, "This action is a challenge . . . to a requirement by respondent City and County of San Francisco ('City') that [Winfield] must maintain seven below market rate units. . . ." Winfield's argument that there was a triable issue of fact as to whether it had complied with the below-market-rate rules is simply incongruous with the allegations it has made and the positions it has taken throughout this litigation, and we therefore reject it.

*C.*     *The Statute of Limitations.*

An action to challenge or review a land-use or zoning decision by a local agency generally must be brought within 90 days of the agency's decision.  (§ 65009, subd. (c)(1).)  In setting this short limitations period, the Legislature sought to reduce delays in completing housing projects.  (*Id.*, subd. (a)(1).)  "The purpose of this section [65009] is to provide certainty for property owners and local governments regarding decisions made pursuant to this division."  (*Id.*, subd. (a)(3).)

Section 65009 applies when a local agency attaches conditions to a project approval.  Paragraph (E) of section 65009, subdivision (c)(1), with its introductory text, provides:  "Except as provided in subdivision (d),[2] no action or proceeding shall be maintained in any of the following cases by any person unless the action or proceeding is commenced and service is made on the legislative body within 90 days after the legislative body's decision.  [¶] . . . [¶]  (E)  To attack, review, set aside, void, or annul any decision on the matters listed in Sections 65901 and 65903,[3] or to determine the

---

[2] Subdivision (d) of section 65009 extends the limitations period to one year for certain actions involving affordable-housing developments.  Winfield does not claim subdivision (d) applies here.

[3] Section 65901 refers to zoning administrator decisions on applications for conditional-use permits or other permits involving variances from zoning requirements.  Section 65903 provides for appeals from those decisions.

reasonableness, legality, or validity of any condition attached to a variance, conditional-use permit, or any other permit."

Winfield acknowledges that section 65009's 90-day limitations period applies in this case.[4] Thus, the only question here involves determining which decision or decisions by the City triggered it. (See *County of Sonoma v. Superior Court* (2010) 190 Cal.App.4th 1312, 1324 [90-day limitations period begins to run from the date of the challenged decision].) Winfield argues that the limitations period should be deemed to have been triggered by the "last administrative adjudicative act," which it claims was the November 29, 2011 rejection by the board of appeals of the appeal of the zoning administrator's decision. It contends that its original petition for a writ of mandamus was timely because it was filed within 90 days of the decision of the board of appeals.

But the limitations period is triggered by the last administrative act approving a land-use restriction—not the last administrative act enforcing such a restriction long after the restriction has been approved and imposed. Winfield's pleadings attacked the condition, which was included as part of the 2003 project approval. Winfield explicitly alleged this by contending that it was wrongly required to provide below-market-rate units "as a condition of the use permit for the construction of a 54 dwelling unit building

_____

[4] The City argues that section 66499.37 also bars Winfield's claims. That section imposes a 90-day limitations period on any action to attack or review a local agency decision concerning a subdivision, including the approval of a tentative or final map. (See *Aiuto v. City and County of San Francisco* (2011) 201 Cal.App.4th 1347, 1357.) Winfield's pleadings do not mention subdivision-map approval, but the judicially noticed material shows that the Planning Department approved a parcel map, with the condition, in February 2005. The board of supervisors later approved a final map in January 2007. We need not rely on section 66499.37 in concluding that Winfield's challenge is time barred because the pleadings show that the challenge was untimely under section 65009, subdivision (c)(1)(E). We note, however, that the sections often overlap and that the reasoning of cases applying section 66499.37 can be helpful in applying section 65009. (See, e.g., *Timberidge Enterprises, Inc. v. City of Santa Rosa* (1978) 86 Cal.App.3d 873, 886 [decision approving subdivision map with an attached condition must be judicially attacked within the 180 days (now 90 days) specified by § 66499.37].)

7

approved by the Board of Supervisors on June 10, 2003." Thus, there can be no question that the condition was imposed at that time, triggering the running of the 90-day period.

The California Supreme Court addressed similar circumstances in *Travis v. County of Santa Cruz* (2004) 33 Cal.4th 757 (*Travis*). The plaintiffs in *Travis* received permits to construct second dwelling units on their properties on the condition that they comply with a Santa Cruz County ordinance restricting occupancy and rent levels. (*Id.* at pp. 763-764.) The plaintiffs filed a petition for a writ of mandate alleging that the ordinance-based restrictions violated state and federal law. In evaluating whether the plaintiffs had timely filed their petition under section 65009, the Supreme Court held that the final administrative act was the approval of the permits with the conditions attached. (*Travis,* at pp. 766-767.)

Our colleagues in Division Five of this District summarized the rule set forth in *Travis, supra,* 33 Cal.4th 757 as follows: "If a party challenges conditions attached to a conditional use permit or other permit, the limitations period runs from the date of final administrative action on the permit." (*County of Sonoma v. Superior Court, supra,* 190 Cal.App.4th at p. 1324.) The application of this rule is demonstrated in *Trinity Park, L.P. v. City of Sunnyvale* (2011) 193 Cal.App.4th 1014. In that case, the City of Sunnyvale conditioned a housing development on compliance with that city's below-market ordinance, which required the developer to sell five houses in a proposed subdivision at below-market prices. (*Id.* at p. 1022.) The appellate court held that the developer's challenge to the condition was untimely under section 65009: "As we have discussed, section 65009, subdivision (c)(1)(E) provides a 90-day limitation period for actions challenging 'the grant, denial, or imposition of conditions on a variance or permit.' [Citation.] Since the gravamen of [the developer's] causes of action also includes its challenge to the imposition of the below market housing condition on the development permit for the . . . development, the 90-day limitations period of section 65009, subdivision (c)(1)(E) applies to its action against the City. [The developer's] failure to serve and file its action 'within 90 days after the legislative body's decision' imposing the below market housing condition . . . is therefore fatal to its claim." (*Trinity*

8

*Park,* at p. 1045, disapproved on another ground in *Sterling Park, L.P. v. City of Palo Alto* (2013) 57 Cal.4th 1193, 1202-1203, 1210.)

Winfield's attempts to characterize its writ petition as a challenge to the 2011 *enforcement* of its conditional-use permit, rather than to the original 2003 *issuance* of the permit, relies on inapposite authority or misconstrues relevant authority. Most notably, Winfield takes the Supreme Court's statements in *Travis* regarding challenges to zoning ordinances out of context. In *Travis*, the Supreme Court concluded that a zoning ordinance may be challenged facially within 90 days of its enactment (see § 65009, subd. (c)(1)(B)), or it may be challenged as applied when it is imposed on a specific project. (*Travis, supra,* 33 Cal.4th at pp. 767-771.) Subdivision (c)(1)(E) of section 65009 applies to the latter. (*Travis, supra,* at pp. 768-769.) But simply because property owners can challenge zoning ordinances and other land-use restrictions when they are imposed on their property does not mean that property owners can wait to challenge restrictions contained in conditional-use permits until they are enforced at some later date. Such a rule would encourage property owners to accept and then ignore conditional-use restrictions: if and when their noncompliance was discovered, the owners would be in no worse a position, and perhaps a better one, than if they had challenged the restrictions at the time they were first approved. We decline to endorse such a perverse incentive. The time to complain about a restriction in a conditional-use permit is within 90 days of when it is approved.[5] As the Supreme Court stated in *Travis,* a plaintiff "may not avoid the short 90-day limit of section 65009 by claiming that the permit or condition is 'void' and thus subject to challenge at any time." (*Id.* at p. 768.)

---

[5] Shortly before oral argument, Winfield notified us that it intended to rely on the recent decision of *Sterling Park, L.P. v. City of Palo Alto, supra,* 57 Cal.4th 1193. That case involves the Mitigation Fee Act (§ 66000.5), which sets forth a procedure for developers to protest fees, dedications, reservations, or other exactions. (§ 66020, subd. (a).) That protest procedure identifies time limits for filing suit separate from those set forth in section 65009. (See § 66020, subd. (d).) But no time prior to oral argument did Winfield invoke the Mitigation Fee Act, and Winfield has therefore waived any issues arising under it. (See *Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11 [appellate court will not consider issue raised for first time in reply brief].)

The condition here required Winfield to provide below-market-rate units under the City Inclusionary Affordable Housing Program, now found at section 415 et sequitur of the Planning Code.  A facial challenge to this program could have been mounted when the program was originally enacted.  Or, an as-applied challenge can be mounted by a property owner within 90 days of the City attaching inclusionary-housing conditions to a project application or approval.  (See *Avenida San Juan Partnership v. City of San Clemente* (2011) 201 Cal.App.4th 1256, 1275-1278 [limitations period began to run from denial of application to build houses, not from earlier enactments imposing land-use restrictions].)  Here, Winfield waited too long to make either challenge.[6]

D.     *Winfield's Estoppel Claims.*

Winfield offers several reasons grouped under an "estoppel" heading for why it should be allowed to proceed with its action notwithstanding section 65009, and we discuss each in turn.[7]

Winfield first contends that it has a statutory right under the Costa-Hawkins Act to establish its rental rates.  Winfield asserts that the City's below-market-rate requirements conflict with the Costa-Hawkins Act.  Based on Winfield's citation to *Palmer/Sixth Street Properties, L.P. v. City of Los Angeles* (2009) 175 Cal.App.4th 1396, we assume that Winfield is arguing that the condition is preempted by the Costa-Hawkins Act.  (See *Palmer/Sixth Street Properties,* at pp. 1410-1412 [city affordable housing requirements conflict with and are preempted by Costa-Hawkins Act].)

The Costa-Hawkins Act, enacted in 1995, generally permits residential landlords to set the initial rent for vacant units.  (See Civ. Code, §§ 1954.52, subd. (a); 1954.53,

---

[6] Winfield waited too long even if one of the other limitations periods it mentions in its briefs applied.  (See, e.g., *Knox v. Davis* (9th Cir. 2001) 260 F.3d 1009, 1012-1013 [actions brought pursuant to 42 U.S.C. § 1983 governed by California's statute of limitations for personal injury actions].)

[7] The City also makes an estoppel argument.  It contends that Winfield cannot be allowed to avoid the condition after having reaped the benefits of the project approval.  We need not resolve this contention because we affirm the trial court's judgment on the grounds cited by the trial court.

10

subd. (a).) Local rent-control ordinances to the contrary are preempted. (*Bullard v. San Francisco Residential Rent Stabilization Bd.* (2003) 106 Cal.App.4th 488, 489, 492-493.) Local affordable-housing laws that purport to dictate initial rental rates for new rental units are also preempted. (*Palmer/Sixth Street Properties, L.P. v. City of Los Angeles, supra,* 175 Cal.App.4th at p. 1410.)

We need not address the preemptive consequences of the Act, however, because we conclude that Winfield's failure to raise the argument when the City approved its project is fatal to the claim. The time for property owners to assert a claim that an ordinance is preempted by an existing state statute is when the ordinance is applied to their property. (*Travis, supra,* 33 Cal.4th at p. 774.) "[A]n action is not removed from the purview of section 65009, subdivision (c)(1)(E) merely because the plaintiff claims the permit or condition was imposed under a facially unconstitutional or preempted law." (*Id.* at p. 768; see also *County of Imperial v. McDougal* (1977) 19 Cal.3d 505, 510-511 [landowner barred from challenging condition imposed on granting of permit if he or she failed to challenge its validity and accepted the benefits afforded by the permit].)

Winfield next argues under its estoppel heading that the condition amounted to a taking of private property without just compensation in violation of the state and federal constitutions and 42 U.S.C. § 1983. But a regulatory-takings claim must also be timely brought within the 90 days provided by section 65009, subdivision (c)(1)(E). (*Travis, supra,* 33 Cal.4th at p. 775; see *Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22 [90-day period found in section 66499.37 establishes limitations period for takings claim arising from application of regulation to specific piece of property].) Again, Winfield is barred from pursuing this claim because it did not timely challenge the condition.

Winfield finally argues under its estoppel heading that the City was required to obtain a waiver of Winfield's statutory and constitutional rights when it issued the conditional-use permit. Winfield contends that the City's obligation to obtain a waiver arose because, unlike the City, Winfield (and its counsel) were unaware of the Costa-Hawkins Act when the conditional-use permit was issued. In contrast, Winfield points out that the City must have been aware of the Act because at the time it was involved in

11

litigation over whether the Act preempted the City's rent-control ordinance. (See *Bullard v. San Francisco Residential Rent Stabilization Bd., supra,* 106 Cal.App.4th 488.) Winfield believes the City should be estopped from taking advantage of its superior knowledge, but it cites no authority supporting the notion that a local government agency is required to inform a landowner (let alone obtain a waiver) about possible legal challenges to a conditional-use permit. The first case cited by Winfield in support of its argument, *Fredrichsen v. City of Lakewood* (1971) 6 Cal.3d 353, is a personal injury case. The holding in *Fredrichsen* was that the government tort-claims requirement (Gov. Code, § 900 et seq.) may be excused when a claimant has been misled by government agents on the requirements of the claims statute. (*Fredrichsen,* at p. 357.) We fail to discern how *Fredrichsen* has any application here.

The second case cited by Winfield, *Estate of Peterson* (1968) 259 Cal.App.2d 492, does not involve a governmental entity. Instead, the case involved a trial court's decision to set aside a settlement agreement because of an attorney's drafting mistake. Even if this case could support an argument that Winfield was entitled to relief due to some sort of mistake, the argument would fail because Winfield's challenge was untimely.

Other cases cited by Winfield are similarly inapposite. (*Hittle v. Santa Barbara County Employees Retirement Assn.* (1985) 39 Cal.3d 374 [county employee's waiver of disability retirement can be enforced only upon showing the decision was an informed one]; *Petrillo v. Bay Area Rapid Transit Dist.* (1988) 197 Cal.App.3d 798 [public safety officer did not waive right to hearing on termination of disability benefits when employer did not inform him he was entitled to a hearing]; *Potstada v. City of Oakland* (1973) 30 Cal.App.3d 1022 [city estopped from asserting statute of limitations defense when it did not give required written notice of action on plaintiff's claim in personal injury action].) These cases all state general principles of law relating to waiver and estoppel, but none of them supports Winfield's argument that it should be excused from having failed to challenge the condition at the time it was approved as part of the conditional-use permit.

In short, we are not persuaded by any of the arguments that Winfield asserts under its estoppel heading.

E.      *The Eviction Allegations.*

Winfield also offers a variety of arguments that turn on its allegation that it was penalized for evicting a below-market-rate tenant. Aside from generally contending that the eviction allegations rendered its petition for a writ of mandamus timely, Winfield argues that the allegations support a claim that the City violated the judicial powers clause of the California Constitution (art. VI, § 1)[8] and the litigation privilege (Civ. Code, § 47, subd. (b); see *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1243-1244 [litigation privilege preempted local ordinance permitting suit against landlord seeking to recover possession of rental unit].) But we need not resolve the merits of these legal arguments because we conclude, based on the pleadings and judicially noticed material, that the trial court was correct in finding Winfield was not penalized for evicting its tenant.

The notice of violation and penalty stated it "has been reported" that Winfield had failed to comply with the condition. It referred to reports that Winfield was charging rent higher than what was allowed and that a below-market-rate unit was being occupied by the building manager. In addition, the notice stated, without elaboration: "A BMR tenant has also been reported to be evicted."

At the hearing before the zoning administrator, a program manager from the Mayor's Office of Housing addressed Winfield's failure to comply with the condition. The manager described complaints about excessive rents from Winfield's tenants and Winfield's failure to take measures to bring itself into compliance. The manager also accused Winfield of "wrongfully" evicting a below-market-rate tenant, "which is also against BMR program rules."

---

[8] Article VI, section 1 of the California Constitution provides: "The judicial power of this State is vested in the Supreme Court, courts of appeal, and superior courts, all of which are courts of record."

In his decision, the zoning administrator found Winfield to be in violation of the condition and the Planning Code's inclusionary-housing program. The administrator rejected Winfield's arguments that it was exempt from the program, upheld the notice of violation and penalty, and ordered Winfield to abate the violation by working with the Mayor's Office of Housing to comply with the condition. In his findings, the zoning administrator made no mention whatsoever of the eviction. The penalties were levied prospectively at $250 a day for each day Winfield failed to abate the violation of the condition. No penalty was imposed for the alleged wrongful eviction.

The administrative decision was properly noticed without objection and, as the trial court found, it makes plain that Winfield was not penalized for the eviction. (See *Poseidon Development, Inc. v. Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106, 1117 [court may take judicial notice of matter even if it negates an express allegation of the pleading]; see also *Fowler v. Howell* (1996) 42 Cal.App.4th 1746, 1749 [court may take notice that administrative findings and decision were made].)

Thus, Winfield's attempt to assert a timely claim based on the eviction allegations fails. Winfield's reliance on *Uniwill v. City of Los Angeles* (2004) 124 Cal.App.4th 537 is misplaced. In *Uniwill*, the Court of Appeal concluded that a plaintiff's claim against a local agency for demanding a public-utility easement was not subject to the 90-day statute of limitations contained in section 66499.37 (which requires that objections to tentative maps be made within 90 days). The court concluded that this limitations period was inapplicable because the agency's demand was made after the tentative map had been approved and substantial work on the project had been completed. (*Uniwill,* at pp. 543-544.) In other words, the court concluded that the plaintiff's claim contesting the local agency's demand was not a challenge to the map approval and was therefore not governed by map-approval limitations periods. This holding does nothing to advance Winfield's cause. Unlike the plaintiff in *Uniwill*, Winfield is not contesting an alleged independent wrong by a local agency taken long after a planning or zoning decision. Instead, Winfield is contesting the condition, which was imposed as part of the original 2003 project approval.

14

Winfield's arguments under the judicial-powers clause and the litigation privilege are also unfounded. These arguments are based on a claimed interference with Winfield's right to evict tenants. Winfield, however, never alleged that the City prevented it from evicting its below-market-rate tenant. Instead, it alleged it filed an unlawful detainer action against the tenant who was delinquent in paying rent, the parties settled, and the tenant vacated the unit. Thus, by Winfield's own allegations, it was not prevented from evicting the tenant and, as we discussed above, it was not penalized for it. We conclude that the trial court's denial of Winfield's petition was proper notwithstanding Winfield's allegations about the eviction.

## F. The Penalty.

Winfield's final argument is that the penalty of $250 per day (plus $3,177.32 in costs) was excessive and confiscatory. This argument again relies on the allegation that Winfield was penalized for evicting a below-market-rate tenant. As we discussed *ante*, the record is clear that Winfield was *not* penalized for evicting a tenant. Nonetheless, we will briefly review the penalty and the authority cited by Winfield because its argument could be construed as a general challenge to the administrative penalty without regard to the eviction allegations.

The administrative penalty was imposed under Planning Code section 176, subdivision (c)(1), which provides for administrative penalties of up to $250 for each day a violation of the code continues unabated. Winfield notes there is no "cap" on the penalty, and compares the penalty to the one found unconstitutional in *Hale v. Morgan* (1978) 22 Cal.3d 388 (*Hale*). The comparison is misplaced.

In *Hale*, a landlord was penalized $17,300 under Civil Code section 789.3 for disconnecting a tenant's utility services. (*Hale, supra,* 22 Cal.3d at p. 393.) As effective during the relevant time period, section 789.3 provided for a mandatory $100 per day penalty for each day a tenant was deprived of utility services. (*Hale,* at p. 399.) The Supreme Court concluded the section permitted the assessment of arbitrary, excessive, and unreasonable penalties that exceeded constitutional (due process) limits. (*Id.* at pp. 397-398.) Among the factors cited by the Supreme Court in reaching its conclusion

15

were the mandatory nature of the penalty, its potential unlimited duration, and the absence of discretion permitted the trier of fact in fixing the penalty. (*Id.* at p. 399.) The court noted the same penalty would apply across a broad range of culpable activity and to offenders who might vary greatly in sophistication and financial strength. (*Ibid.*) The court found Civil Code section 789.3 was "wholly inconsistent with the statutory norm" (*Hale,* at p. 400), and under the circumstances (a monthly rent of $65) was constitutionally excessive (*id.* at p. 405). "In summary, operation of the penalty provided by [Civil Code] section 789.3 is mandatory, mechanical, potentially limitless in its effect regardless of circumstance, and capable of serious abuse." (*Id.* at p. 404.)

The penalty imposed on Winfield was neither mandatory nor mechanical and, notwithstanding its open-ended nature, unlikely to be potentially limitless in effect regardless of circumstance. Even more important, it was fundamentally different from the penalty imposed in *Hale, supra*, 22 Cal.3d 388. In *Hale* the penalty was an inflexible mandatory punishment for prior illegal conduct; here, the penalty was a prospective charge that could be avoided entirely by abating the violation. As the zoning administrator's order made clear, "No penalties are due at this time[;] however, failure to take the compliance actions as noted above or appeal to the Board of Appeals within fifteen (15) days will result in accrual of penalties thereafter." Winfield was perfectly able to avoid the penalty by complying with the condition, or to seek a stay of the penalty during the pendency of its challenges to the administrative decision.[9]

Winfield argues that the penalty was excessive because the condition is "unworkable," and compliance is therefore difficult or impossible. But Winfield did not assert below that providing seven below-market-rate units was impossible, that Planning Code penalties were subject to serious abuse, or that, under the circumstances, $250 a day was an outrageous and excessive amount in relation to either the value of Winfield's property or the fair market value of the below-market-rate units. We conclude that

---

[9] The record does not reflect that Winfield sought or received a stay during the pendency of its petitions.

Winfield failed to plead a viable claim that the prospective penalty imposed against it is unconstitutional.

III.

DISPOSITION

The judgment is affirmed.


_____
Humes, J.


We concur:


_____
Reardon, Acting P.J.


_____
Rivera, J.