Filed 9/23/16

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE


| | |
|---|---|
| 616 CROFT AVE., LLC, et al., | B266660 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC498004) |
| v. | |
| CITY OF WEST HOLLYWOOD, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Los Angeles County. Luis A. Lavin, Judge. Affirmed.

Rutan & Tucker and David P. Lanferman for Plaintiffs and Appellants.

Jenkins & Hogin, Michael Jenkins, Christi Hogin and Gregg W. Kettles for Defendant and Respondent.


_____

Plaintiffs Shelah and Jonathan Lehrer-Graiwer and 616 Croft Ave., LLC (collectively Croft), appeal from a superior court order denying their petition for a writ of mandamus to compel the City of West Hollywood (the City) to return fees the City collected when Croft applied for building permits. Croft argues the City's collection of the fees was invalid (1) facially under the due process clause of the United States Constitution and (2) "as applied" because the City did not bear its burden in proving the fees were "reasonably related" to the deleterious public impact caused by Croft's development. We disagree and affirm.

## BACKGROUND

Croft is the developer of 612–616 North Croft Avenue, an "in-fill" complex of residential rental units in West Hollywood.[1] In 2004, Croft applied to the City for permits to demolish two single-family homes sitting on adjacent lots and construct in their place an 11-unit condominium complex on the combined lots. In reviewing Croft's permit applications, the City determined Croft's proposed development fell under the City's inclusionary housing ordinance (the Ordinance), West Hollywood Municipal Code (WHMC) section 19.22.010 et seq., which the City enacted to increase the availability of affordable housing in West Hollywood. The Ordinance requires developers to sell or rent a portion of their newly constructed units at specified below-market rates or, if not, to pay an "in-lieu" fee designed to fund construction of the equivalent number of units the developer would have otherwise been required to set aside. (WHMC, §§ 19.22.030–19.22.040.)[2] The City calculates the "in-lieu" fee according to a schedule developed via resolution by the West Hollywood City Council (the City Council). (WHMC, §

---

[1] "In-fill" projects refer to developments on unused bits of urban land to maximize the use of urban space and existing infrastructure and reduce urban sprawl.

[2] The in-lieu fee is available only to "[d]evelopers of residential projects with 10 or fewer units." (WHMC, § 19.22.040, subd. A.) Croft qualified, seemingly, because it added only nine net units.

2

19.64.020.) When issuing its approval of Croft's permits, the City inquired how Croft would comply with the Ordinance. Croft responded it would pay the in-lieu fee.

In 2005, the City approved Croft's permits application. The City conditioned the approval on, and would not issue demolition and construction permits until, Croft agreed to a number of conditions, including paying the fees at issue here. The City also specified that if it altered the fee schedule prior to Croft obtaining the building permits, Croft would be subject to the new schedule. The City set the permits' approval to expire in 2007, two years from its issuance of approval. In November 2005, Croft executed an "Acceptance Affidavit," indicating it accepted "all conditions of approval," including paying the fees.

Croft was unable to move forward with its development plans due, in part, to the economic downturn that began in 2007. At Croft's request, the City extended its approval of Croft's permits application several times. During this time, the City revised its fee schedule. Croft agreed again, via at least one additional signed affidavit, to be subject to this new schedule as part of the conditions for renewal.

In 2011, Croft finally requested its building permits. The City supplied Croft with the revised fee schedule, showing the fees the City required as a condition to issue the permits. According to the fee schedule, Croft would owe $581,651.15 in fees for: in-lieu housing ($540,393.28), parks and recreation ($36,551.59), waste water mitigation ($675.00), and traffic mitigation ($4,031.28). The in-lieu housing fee had nearly doubled since 2005. Croft paid the fees in December 2011, but in a letter indicated it did so "under protest" pursuant to the Mitigation Fee Act (Gov. Code, §§ 66000–66025). According to Croft, the City was unjustified and premature in its collection of fees. Croft also facially challenged the in-lieu fee under the so-called *Nollan/Dolan* line of Fifth Amendment takings cases (*Nollan v. California Coastal Comm'n* (1987) 483 U.S. 825 [107 S.Ct. 3141]; *Dolan v. City of Tigard* (1994) 512 U.S. 374 [114 S.Ct. 2309]) and requested the City to furnish information regarding whether Croft had "any available process for appeal or administrative review." The City did not respond to Croft's inquiry about the possibility of an administrative appeal or review because, according to the City,

3

"[i]t was then, and continues to remain, unclear to the City that Petitioners were entitled to such under the City's code."

On December 21, 2012, Croft sued the City. Croft brought five causes of action: (1) declaratory relief establishing the in-lieu fees were illegal; (2) declaratory relief establishing the City violated the Mitigation Fee Act; (3) refund of the fees collected from Croft; (4) an injunction to prevent the City from further collecting in-lieu fees; and (5) a writ of mandate to compel the City to return the funds or, alternatively, hold an administrative hearing to determine the validity of the collection. The parties agreed to stay the suit while the City held an administrative hearing before the City Council. On April 15, 2013, the City Council approved Resolution No. 13-4426, which upheld the City's collection of the majority of the fees, save the $675 waste water mitigation fee, which the City conceded it had prematurely collected. Croft then returned to court and added a sixth cause of action for administrative mandate. Croft agreed to sever the administrative mandate cause of action for an immediate hearing. After a hearing, the court denied the writ. Croft voluntarily dismissed its remaining claims and appealed. During the litigation, Croft completed the condominium complex.

## DISCUSSION

On appeal, Croft argues the fees are invalid (1) generally and (2) as applied to it. Croft further argues that the trial court erroneously shifted the burden of proof from the City to Croft and that the City did not carry its burden in showing the fees were reasonably related to public needs caused by the development.

We apply two standards of review. First, we review the facial challenge de novo because it is a pure question of law. (*Alviso v. Sonoma County Sheriff's Dept.* (2010) 186 Cal.App.4th 198, 204.) Second, we review the as-applied challenge for substantial evidence, but in doing so we determine whether the *administrative record* supports the City Council's decision, not whether the evidence at trial supported the trial court's decision. (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 217–218.)

4

## A. The in-lieu fees were proper

### 1. Social and legal context

The lack of affordable housing has been a statewide issue of concern for almost 40 years. In 1977, the Legislature codified its finding that "there exists within the urban and rural areas of the state a serious shortage of decent, safe, and sanitary housing which persons and families of low or moderate income, including the elderly and handicapped, can afford. This situation creates an absolute present and future shortage of supply in relation to demand, as expressed in terms of housing needs and aspirations, and also creates inflation in the cost of housing, by reason of its scarcity, which tends to decrease the relative affordability of the state's housing supply for all its residents." (Health & Saf. Code, § 50003.3, subd. (a).) By 1982, the Legislature called "[t]he lack of housing . . . a critical problem that threatens the economic, environmental, and social quality of life in California." (Gov. Code, § 65589.5, subd. (a)(1).) Government Code section 65583, subdivision (c)(2) mandated cities like West Hollywood must "[a]ssist in the development of adequate housing to meet the needs of extremely low, very low, low-, and moderate-income households" to help address the housing crisis as part of the statutory obligation to "adopt a comprehensive, long-term general plan for [its] physical development" (Gov. Code, § 65300). This context elucidates both the City's adoption of the Ordinance and our deferential recognition of it as a land use regulation rather than as an exaction or special tax, explained further in part A.3, *post*.

### 2. Croft's facial challenge is time barred

As an initial matter, Croft argues the trial court mischaracterized its facial argument as a " 'constitutionality' " challenge rather than a "*validity*" challenge. Croft, however, argued the fees are invalid because they do not satisfy the Fifth Amendment due process requirements of the *Nollan/Dolan* line of takings cases. This is plainly a constitutional challenge. Even if it were not a constitutional challenge, re-characterizing the argument would not save the claim from procedural failure because Croft's challenge is untimely.

5

Government Code section 65009, subdivision (c)(1)(B)–(C) requires that "no action or proceeding shall be maintained . . . by any person unless the action or proceeding is commenced and service is made on the legislative body within 90 days after the legislative body's decision" if the action is to "attack, review, set aside, void, or annul the decision of a legislative body to adopt or amend a zoning ordinance" or "determine the reasonableness, legality, or validity of any decision to adopt or amend any regulation attached to a specific plan." This 90-day limitation applies even if the facial challenge is part of an as-applied challenge. (*Travis v. County of Santa Cruz* (2004) 33 Cal.4th 757, 776.) Here, Croft challenges the City's enactment of the Ordinance and its attendant fee schedule. Croft's challenge is untimely because Croft brought it more than 90 days after the City enacted the Ordinance and adopted the fee schedule. The City adopted the Ordinance in 2001 and approved the fee schedule, as modified, on June 20, 2011, but Croft did not bring its challenge until, at the earliest, December 22, 2011, if we consider Croft's protest letter a proper facial challenge. Croft's argument that the City waived this defense because the City did not plead it is unavailing. The record contains the City's answer, which clearly pleads "every purported cause of action therein, is barred by any and all applicable statutes of limitation."

**3.** **Croft's as-applied challenge improperly places the burden on the City and incorrectly states how the fee must be reasonable**

**a.** **Croft bears the burden, not the City**

Croft argues the City bears the burden to prove its fees were reasonable under the Mitigation Fee Act, articles XIII C and XIII D of the California Constitution, and its own municipal code.[3] These provisions do not place the burden on the City either at all or in the way Croft argues.

---

[3] Croft references "art. XIII D, § 6 subd. (b)(6)" of the California Constitution several times in its appellate argument, but no such paragraph exists. We construe this incorrect reference as a typographical error and assume Croft intended to reference article XIII D's provisions about special taxes in light of its statement one of its "alternative position[s]" is that the fees "are in reality in the nature of invalid 'special taxes.' (Cal. Const., art. XIII A, XIII C, XIII D.)"

6

The Mitigation Fee Act applies when "a monetary exaction other than a tax or special assessment . . . is charged by a local agency to the applicant in connection with approval of a development project for the purpose of defraying all or a portion of the cost of public facilities related to the development project . . . ." (Gov. Code, § 66000, subd. (b).) In *California Building Industry Assn. v. City of San Jose* (2015) 61 Cal.4th 435, 443–444 (*San Jose*), the California Supreme Court held that an affordable housing provision similar to the Ordinance here was not an "exaction" which invoked the United States Constitution's Fifth Amendment due process takings protections. (*Ibid.*; *id.* at p. 461.) Instead, such a restriction "is an example of a municipality's permissible regulation of the use of land under its broad police power." (*Id.* at p. 457.) Although the facts here are slightly different than in *San Jose* because Croft challenges paying an in-lieu fee rather than actually setting aside a number of units, the reasoning in *San Jose* applies. Croft paid the in-lieu fee voluntarily as an *alternative* to setting aside a number of units. If a set-aside requirement is not governed by *Nollan* or *Dolan*, then "the validity of the in lieu fee—which is an alternative to the on-site affordable housing requirement—logically cannot depend on whether the amount of the in lieu fee is reasonably related to the development's impact on the city's affordable housing need" under *Nollan* or *Dolan* either. (*San Jose*, at p. 477.)

In addition, and as in *San Jose*, the purpose of the in-lieu housing fee here is not to defray the cost of increased demand on public services resulting from Croft's specific development project, but rather to combat the overall lack of affordable housing. (*San Jose*, *supra*, 61 Cal.4th at p. 444.) This type of fee is not "for the purpose of mitigating the adverse impact of new development but rather to enhance the public welfare by promoting the use of available land for the development of housing that would be available to low- and moderate-income households." (*Id.* at p. 454.) Assuming the fee is such a land use regulation, "[a]s a general matter, so long as a land use regulation does not constitute a physical taking or deprive a property owner of all viable economic use of the property, such a restriction does not violate the takings clause insofar as it governs a

7

property owner's future use of his or her property." (*Id.* at p. 462.)[4] This is especially true when the regulation, like the one here, broadly applies nondiscretionary fees to a class of owners because the risk of the government extorting benefits as conditions for issuing permits to individuals is unrealized. (*San Remo Hotel v. City and County of San Francisco* (2002) 27 Cal.4th 643, 668–670; see also *Ehrlich v. City of Culver City* (1996) 12 Cal.4th 854, 860, 880–881 [applying the *Nollan/Dolan* requirements to an individual fee charged to a developer, in part, because it was not "a *generally* applicable development fee or assessment"].)

Croft further argues even if the in-lieu fee is not an exaction, the City's "right of first refusal" to buy the set-aside units, if the targeted renters or buyers do not buy them, is an exaction under Government Code section 66020 and *Sterling Park*. (See *Sterling Park*, *supra*, 57 Cal.4th at pp. 1207–1208 ["Compelling the developer to give the City a purchase option is an exaction under section 66020"].)[5] This argument is unavailing. First, Croft did not set aside units. Croft can therefore challenge this portion of the Ordinance on only a theoretical level. If the challenge is theoretical, it cannot be as-applied and must be facial. As described above, a facial challenge is time barred. Second, and also as described above, the Mitigation Fee Act does not apply to the in-lieu fee. Any language in Government Code section 66020 defining a right of first refusal as an exaction is therefore inapplicable here.

---

[4] Croft argues the California Supreme Court held in *Sterling Park, L.P. v. City of Palo Alto* (2013) 57 Cal.4th 1193 (*Sterling Park*) that a similar inclusionary ordinance was not a land use regulation, but rather imposed exactions. *Sterling Park* does not adversely bear on our analysis, however, because, as the *San Jose* court held, "*Sterling Park* did not address or intend to express any view whatsoever with regard to the legal test that applies in evaluating the substantive validity of the affordable housing requirements imposed by an inclusionary housing ordinance." (*San Jose*, *supra*, 61 Cal.4th at p. 482.)

[5] Under the Ordinance, "[a]fter offering the units to eligible households displaced by demolition, the developer of a project shall be required to give right of first refusal to purchase any or all inclusionary units to the city, or a city-designated agency or organization, for at least 60 days from the date of construction completion." (WHMC, § 19.22.090, subd. C.)

Croft's cited California Constitution articles also do not place the burden on the City to demonstrate individual reasonableness. Croft argues that if the fees are not exactions then they are special taxes masquerading as fees and the City constitutionally bears the burden to prove otherwise under articles XIII C and XIII D. Under article XIII C, section 1, subdivision (e)(7), a "local government bears the burden of proving by a preponderance of the evidence that a levy, charge, or other exaction is not a tax, that the amount is no more than necessary to cover the reasonable costs of the governmental activity, and that the manner in which those costs are allocated to a payor bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity." Article XIII D, section 1, subdivision (b), however, establishes that "[n]othing in this article or Article XIII C shall be construed to: [¶] . . . [¶] (b) Affect existing laws relating to the imposition of fees or charges as a condition of property development." Courts have held that fees like the ones here, which are a condition of property development, are not special taxes.

For example, and as the City argues, *Terminal Plaza Corp. v. City and County of San Francisco* (1986) 177 Cal.App.3d 892 held that fees collected under an ordinance aimed at replacing residential hotel rooms, which had been available to lower income and elderly residents but were lost when developers converted them to tourist hotel rooms or condominiums, were not special taxes. (*Id.* at pp. 898, 906–907.) The fees were not special taxes because they were not "earmarked for general revenue purposes or to pay for a variety of public services. Nor [we]re they imposed upon the land, but rather upon the privilege of converting residential hotel units to other uses. Moreover, the ordinance [wa]s not compulsory in nature, since fees are exacted only if the property owner elects to convert his property to another use. And, finally, the regulatory fees imposed by the ordinance have no impact upon general government spending and do not contravene that broad objective of article XIIIA. [Citation.] [¶] Since, simply stated, the ordinance is *not* a revenue producing measure, we find that neither the costs incurred to provide replacement housing nor the *in lieu* fees are in the nature of a 'special tax' under section 4." (*Id*. at pp. 906–907.) That reasoning applies to the in-lieu housing fee here: The fees

9

are not deposited into the general coffers; the fees are not used to offset the increased demand for public services; the fees are not imposed on the land, but rather on building residential developments; the fees are not compulsory because developers could choose the set-aside option or to build a different type of development; and, finally, the fees do not impact government spending. Because the City has shown the fees are not special taxes under *Terminal Plaza*, articles XIII C and XIII D of the California Constitution do not require the City to demonstrate the reasonableness of Croft's individual fee.

Croft argues that even if the City is not statutorily or constitutionally obligated to demonstrate reasonableness, the City took that responsibility upon itself in its municipal code. West Hollywood Municipal Code section 19.64.040, subdivision C.1 states: "Any person subject to a fee required by this chapter may apply to the Council for an adjustment, reduction, postponement, or waiver of that fee based upon the absence of a *reasonable relationship* between the impact of that person's commercial or residential development project on the demand for affordable housing." (Italics added.) Croft is incorrect. This provision does not necessarily place the burden on the City to demonstrate reasonableness. Given that ordinarily in " 'a challenge to a legislative decision, the petitioner has the burden of proof to show that the decision is unreasonable or invalid as a matter of law' " (*Weinstein v. County of Los Angeles* (2015) 237 Cal.App.4th 944, 966), we will not shift the burden to the City absent evidence it was the City's intent to do so.

**b.      The reasonableness test applies to the creation of the fee schedule, not its application**

Croft mischaracterizes the nature of the reasonableness inquiry and does not present evidence relating to the correct inquiry; even if it had, the claim related to such an inquiry would be facial and time barred, as described above in part A.2.

Croft characterizes the nature of the reasonableness inquiry as the City proving that, dollar for dollar, the fee it charged Croft was proportional to the negative impact Croft's development had on the demand for affordable housing. This is incorrect. To start, as described above, the burden is on Croft, not the City. Second, although the fee

10

must be reasonable, the inquiry is not about the reasonableness of the individual calculation of fees related to Croft's development's impact on affordable housing.[6] The inquiry is whether the fee schedule *itself* is reasonably related to the overall availability of affordable housing in West Hollywood. As the *San Jose* court held, "when a municipality enacts a broad inclusionary housing ordinance to increase the amount of affordable housing in the community and to disperse new affordable housing in . . . the community, the validity of the ordinance does not depend upon a showing that the restrictions are reasonably related to the impact of a particular development to which the ordinance applies. Rather, the restrictions must be reasonably related to the broad general welfare purposes for which the ordinance was enacted." (*San Jose*, *supra*, 61 Cal.4th at p. 474.) Croft does not challenge the City's method in creating the fee schedule.[7]

Because Croft did not dispute the City's creation of the fee schedule, and in light of the statute of limitations, we do not address whether the evidence demonstrates the reasonableness of the fee schedule itself. (See *San Jose*, *supra*, 61 Cal.4th at p. 479 [declining to comment on "the validity of the amount of the particular in lieu fee at issue in *City of Patterson* [(2009) 171 Cal.App.4th 886, disapproved on another point in *San Jose*] or of the methodology utilized in arriving at that fee" when it was not at issue].)

---

[6] As an as-applied challenge, Croft could, of course, have disputed the City's *actual mathematical calculation* of its individual fee. For example, Croft could have argued the City exaggerated the number of square feet or made a multiplication error. Croft makes no such arguments here, however; instead, Croft disputes the reasonableness of the overall fee to the deleterious public impact of its individual project on the City. The only viable as-applied argument Croft does make, about the timing of the City's collection, is addressed in part C, *post*.

[7] Even if it had, "[a]s a general matter, so long as a land use restriction or regulation bears a reasonable relationship to the public welfare, the restriction or regulation is constitutionally permissible," and in " 'deciding whether a challenged [land use] ordinance reasonably relates to the public welfare, the courts recognize that such ordinances are presumed to be constitutional, and come before the court with every intendment in their favor.' " (*San Jose*, *supra*, 61 Cal.4th at p. 455.)

11

**B.      The parks and recreation and traffic mitigation fees were proper**

**1.      The City correctly calculated the parks and recreation fee**

Croft argues the City incorrectly calculated the parks and recreation fee because it used the total number of units resulting from Croft's development instead of the net number of units. Croft argues it added only nine new units overall because it tore down two existing dwellings before it built its 11 new units. Government Code section 66477, subdivision (a)(2) states, however, that parks and recreation fees "shall be based upon the *residential density*, which shall be determined on the basis of the approved or conditionally approved tentative map or parcel map and the average number of persons per household." (Italics added.) Croft cited no law permitting a "net" exception to this rule, and the cases it does cite are inapposite. (E.g., *Warmington Old Town Associates v. Tustin Unified School Dist.* (2002) 101 Cal.App.4th 840, 845 [considering school-impact fees, not parks and recreation fees]; *Cresta Bella, LP v. Poway Unified School Dist.* (2013) 218 Cal.App.4th 438, 442–443 [same].) We uphold the City's calculation under the statutory language and in the absence of an exception.

**2.      Croft abandoned its traffic fees claim on appeal**

On Appeal, Croft stated it does "not challenge the City's resolutions setting fees for . . . the purpose of traffic mitigation actually caused by new development in general, and does not now challenge the *traffic fees* as applied to the net increase of nine (9) units created by" Croft's development. Because Croft abandoned its traffic fees claim, we do not consider it.

**C.      The City collected the fees at an appropriate time**

Croft argues the City collected the fees too early. According to Croft, Government Code section 66007, subdivision (a) mandates that "most fees imposed on residential development projects may not be demanded any earlier than the time of completion [of] either (a) final inspection or (b) certificate of occupancy." Croft argues this limitation applies to both the in-lieu fee and the parks and recreation fee. Section 66007's timing limitation applies to neither.

12

Government Code section 66007, as part of the Mitigation Fee Act, does not apply to the in-lieu fee, as described above.[8]  Croft fails to cite any additional law stating the collection of the in-lieu fee was untimely.  Absent Croft identifying some other law indicating this timing was unlawful, we will not hold the City collected the fees too soon.

As to the parks and recreation fee, under Government Code section 66007, subdivision (b)(1)(B), the City was permitted to collect fees "to reimburse" itself "for expenditures previously made" prior to the final inspection or issuance of the certificate of occupancy.  (Gov. Code, § 66007, subd. (b)(1)(B).)  In its administrative ruling, the West Hollywood City Council determined that the parks and recreation fees "were used to offset the cost of the recent renovation of nearby West Hollywood Park."  This lone statement, although thin, is substantial evidence supporting the City's claim, and Croft presented no evidence this statement was untrue.  In light of the absence of evidence of this statement's untruthfulness, we uphold the timing of the City's collection of the parks and recreation fee.

**D.      We need not reach the City's remaining affirmative defenses**

The City alleges Croft was barred from bringing this suit because (1) it waived its right to do so when it agreed to pay the fees and (2) Government Code section 66020, subdivision (d) time bars the claims.  We need not address the waiver argument because we are upholding the judgment on different grounds.  (*Sutter Health Uninsured Pricing Cases* (2009) 171 Cal.App.4th 495, 513, quoting *Filipino Accountants' Assn. v. State Bd. of Accountancy* (1984) 155 Cal.App.3d 1023, 1029 ["Ordinarily, when an appellate court concludes that affirmance of the judgment is proper on certain grounds it will rest its decision on those grounds and not consider alternative grounds which may be

---

[8] Even if it did, Croft omits a critical phrase from its interpretation of the statute's timing limitation.  The statute imposes this timing limitation only "on a residential development *for the construction of public improvements or facilities*."  (Gov. Code, § 66007, subd. (a), italics added.)  Here, the City collected the fees for nonprofit corporations to develop residential units to be sold to private entities.  (WHMC, § 19.22.040, subd. E.)  Although the creation of these units supports a public goal, the units themselves are not public improvements nor are they public facilities.  That is, the City does not operate, own, or profit from the finished units.

available"].)  We do not address the Mitigation Fee Act's statute of limitation because the City argues the Mitigation Fee Act does not apply to the Ordinance, and we agree.

## DISPOSITION

The judgment is affirmed.  The City of West Hollywood is awarded its costs on appeal under California Rules of Court, rule 8.278.

CERTIFIED FOR PUBLICATION.


LUI, J.

We concur:


CHANEY, Acting P. J.


JOHNSON, J.